361 F.2d 806
 Joseph Robert RALPH et al., Appellants,
v.
TIDEWATER CONSTRUCTION CORPORATION, a corporation, Raymond International, Inc., a corporation, and Peter Kiewit Sons' Co., a corporation, Joint venturers, trading as Tidewater-Raymond-Kiewit, Appellees.
Eugene C. LEWIS et al., Appellants,
v.
MERRITT-CHAPMAN & SCOTT CORPORATION, Appellee.
M. Ray HURST, Jr., et al., Appellants,
v.
TIDEWATER CONSTRUCTION CORPORATION, a corporation, Raymond International, Inc., a corporation, and Peter Kiewit Sons' Co., a corporation, Joint venturers, trading as Tidewater-Raymond-Kiewit, Appellees.
 Nos. 10269-10271.
 United States Court of Appeals Fourth Circuit.
 Argued April 4, 1966.
 Decided May 30, 1966.
 
 Henry E. Howell, Jr., Norfolk, Va. (Howell, Anninos & Daugherty, Norfolk, Va., on brief), for appellants.
 E. Milton Farley, III, Richmond, Va. (George D. Gibson, R. Kenneth Wheeler, and Hunton, Williams, Gay, Powell & Gibson, Richmond, Va., on brief), for appellees.
 Before BOREMAN and BRYAN, Circuit Judges, and BARKSDALE, District Judge.
 ALBERT V. BRYAN, Circuit Judge:
 
 
 1
 The Portal-to-Portal Act of 1947[1] relieves an employer from liability to pay an employee, for certain activities, the minimum wages or overtime compensation prescribed by the Fair Labor Standards Act of 1938[2], as amended. Certain employees — operating engineers and ironworkers — of the appellee corporations were denied overtime compensation in the District Court by reason of these relief provisions, and they appeal.[3] We affirm.
 
 
 2
 The appellees were the contractors for the construction of a bridge-tunnel for the Chesapeake Bay Bridge-Tunnel Commission, a body corporate and politic established by the Virginia legislature. The project consisted of vehicular bridges and tunnels, 17.9 miles in length, spanning Chesapeake Bay where it meets the Atlantic Ocean. The contract was let on July 21, 1960 and work began in September 1960.
 
 
 3
 The workers on this enterprise, of course, had to have transportation from the shore to their places of work in the Bay. The time required for this travel, at the beginning and end of the day, would vary from 15 minutes to an hour for each trip, depending upon the location of the employee's work point, weather conditions and other factors.
 
 
 4
 At the outset, the workers through their unions[4] desired to negotiate an agreement that all riding time, both to and from work, should be paid for at their regular wage rate, but this was unacceptable to the contractors. Also unacceptable was the workers' final offer on April 18, 1961, before going on strike the next morning, that they would ride to work on their own time but be paid for the return trip. After the inception of the strike, further negotiations culminated in an agreement between the operating engineers and the contractors, which provided a daily allowance of $2.50 "on each day that an employee rides on a boat getting to and from his place of employment." Subsequently, similar travel allowances were arranged with the other employees, including the iron-workers.
 
 
 5
 The present claims are solely for overtime compensation. Each worker spent at least 40 hours per week on the job, so that the riding time, if compensable in wages, would constitute overtime. Minimum wages are not involved. The issue here is made by the assertion of the workers, and the denial of the contractors, that in reckoning overtime, the travel period should be counted as hours worked.
 
 
 6
 The agreement between the operating engineers and the contractors, as relevant, provides:
 
 
 7
 "It is hereby agreed between Tide-water-Merritt-Raymond-Kiewit (Tidewater Construction Corporation, Merritt-Chapman & Scott Corporation, Raymond International, Inc., and Peter Kiewit Sons' Company) and the International Union of Operating Engineers, Local Union No. 147, in regard to persons represented by the Union employed on the Chesapeake Bay Bridge-Tunnel Project that on each day that an employee rides on a boat getting to and from his place of employment, he shall receive a travel allowance of $2.50 per day.
 
 
 8
 "This allowance shall fully compensate the employee for any time spent in riding to and from work and fully satisfies the provisions of Article VIII of the basic agreement between the Contractors in the area and the Union." (Accent added.)
 
 
 9
 The pertinent portion of the ironworkers' agreement reads:
 
 
 10
 "5. Time spent by employees riding in boats to and from work will not be considered working time for any purpose. It being clearly understood that Ironworkers will be covered under the Workmen's Compensation Laws of the Commonwealth of Virginia, while traveling in boats to and from the working sites." (Accent added.)
 
 
 11
 The Portal Act in § 4(a), 29 U.S.C. § 254(a), excepts from the minimum wage and overtime compensation provisions of the FLSA the following activities:
 
 
 12
 "(a) * * *
 
 
 13
 "(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, * * *
 
 
 14
 * * * * *
 
 
 15
 "which occur[s] either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities."
 
 
 16
 Following these clauses subsection (b) declares in pertinent part:
 
 
 17
 "(b) Notwithstanding the provisions of subsection (a) [supra], * * * the employer shall not be so relieved if such activity is compensable by * * *
 
 
 18
 "(1) an express provision of a written or nonwritten contract in effect, at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer;" (Accent added.)
 
 
 19
 Holding that a genuine issue of fact existed, the District Judge denied the contractors' motion for summary judgment based on their good faith reliance upon a written ruling of the Administrator of the Wage and Hour and Public Contracts Division, United States Department of Labor, which declared the travel time not to be compensable work time. Such reliance would constitute a complete defense, under § 10 of the Portal Act, 29 U.S.C. § 259(a), infra, to the employees' claims.
 
 
 20
 The contractors then moved for judgment on the pleadings, contending: (1) the riding time was not compensable under the FLSA, by virtue of § 4(a) of the Portal Act, 29 U.S.C. § 254(a); and (2) the riding time was not made "compensable" by the parties' contracts as permitted by § 4(b), 29 U.S.C. § 254(b). A ruling on this motion was deferred until after verdict by the jury empanelled on the plaintiffs' demand. The District Judge seemingly then held the view which he later expressed that the workers' travel time was, under § 4(a) of the Portal Act, a noncompensable activity. However, he believed that the agreements between the workers and contractors made the travel "compensable" as allowed by § 4(b). The relief of § 4(a), he thought, was thus withdrawn from the contractors unless they were exonerated by § 10 of the Portal Act, 29 U.S.C. § 259(a):
 
 
 21
 "* * * no employer shall be subject to any liability * * * for or on account of the failure of the employer to pay minimum wages or overtime compensation under the * * * [FLSA and other Acts] if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency of the United States specified in * * * this section [the Administrator of the Wage and Hour Division of the Department of Labor] * * *."
 
 
 22
 Therefore, the only issue submitted to the jury was the question whether the contractors had in good faith relied upon the ruling of the Administrator. The jury found for the contractors.
 
 
 23
 The District Judge, we think, should have granted the contractors' motion for judgment on the pleadings or their motion on the same ground for a directed verdict. He rightly felt that the travel time was within § 4(a), and so charged the jury. Thereupon the only question remaining was whether this time had been removed from § 4(a) by the agreements. This required an interpretation by the court alone. Looking at the agreements the only reasonable construction was that the activity did not comprise compensable work hours. See Gramiak v. Pittston Stevedoring Corp., 13 WH Cas. 17, 30 CCH Par. 70,098 (S.D.N.Y.1956). Hence the contractors were then entitled to judgment.
 
 
 24
 The consideration of good faith reliance on the administrative ruling as allowed by § 10 was inappropriate here. Its relief is pertinent only on the issue of whether an employer is liable for minimum or overtime wages when, acting on an administrative ruling, he has treated certain activity as exempted by § 4(a), but subsequently such activity is authoritatively declared not exempt. Section 10 has no relevancy if the court unequivocally finds the activity to be within § 4(a). Of course, the court may consider the ruling in reaching a conclusion on whether the activity is within § 4(a).
 
 
 25
 The administrative advice had no bearing here upon the efficacy of the agreements. Once the activity was adjudged to be under § 4(a), whether the agreements removed it was not a question on which the administrative ruling had any weight. The contractors were bound by what the court should say was their intention. They could not thereafter plead the defense of good faith reliance, under § 10, on the Administrator's view that the agreements did not dissolve the immunity bestowed by § 4(a). Thus the agreements should not have been sent to the jury even for consideration in the light of § 10.
 
 
 26
 The District Judge was apprehensive lest the agreements attempted to exonerate the employers when the Portal Act did not permit it. But that concern was dispelled by the ruling of the Court — altogether correctly — that the activity was within § 4(a). That determination removed all ground for the apprehension. To repeat, the sole remaining question then was a proper reading of the agreements.
 
 
 27
 However, the care and precaution of the District Judge in sending the case to the jury were not harmful, and no error was committed in the conduct of the trial. For the reasons we have outlined the judgments of the District Court dismissing the actions of the workers are sustained.
 
 
 28
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 29 U.S.C. § 251 et seq
 
 
 [2]
 29 U.S.C. § 201 et seq
 
 
 [3]
 Their claims were asserted in three independent actions. In two the plaintiffs were operating engineers, and in the other they were ironworkers. Three of the four defendant-employers (in cases #10,269 and #10,271 here) — Tidewater Construction Corporation, Raymond International, Inc. and Peter Kiewit Sons' Company — were doing business as joint venturers under the designation of TRK; the remaining defendant-employer (in #10,270) was Merritt-Chapman & Scott Corporation. The actions were tried together and the appeals consolidated for argument
 
 
 [4]
 The operating engineers were represented by the International Union of Operating Engineers, Local No. 147, the ironworkers by the Ironworkers Local Union No. 79