**SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, Plaintiff-Appellee,**

v.

**E. R. FIELD, INC., and Eugene R. Field, Defendants-Appellants.**

**No. 73–1402.**

United States Court of Appeals, First Circuit.

Argued April 2, 1974.

Decided April 24, 1974.

John L. Hamilton, Lewiston, Me., with whom Roscoe H. Fales and Fales & Fales, Lewiston, Me., were on brief, for appellants.

Donald S. Shire, Washington, D. C., Atty., with whom William J. Kilberg, Sol. of Labor, Carin Ann Clauss, Associate Sol., Albert H. Ross, Regional Sol., and Robert A. Yetman, and Darryl J. Anderson, Attys., Washington, D. C., were on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

After a non-jury trial the district court entered an injunction compelling E. R. Field, Inc. and Eugene R. Field (collectively Field) to adhere to the provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., and to pay $1,568.62 of unlawfully withheld back wages to former employee Richard Audet. Field argues three grounds for reversal: (1) that Audet's time was not "employment", and hence not compensable under the Act; (2) that Field and Audet had reached an "understanding" under § 207(g)(2) for payment for different tasks at different rates; and (3) that the Portal to Portal Act, 29 U.S.C. § 254, exempts Audet's driving time from the scope of the Fair Labor Standards Act. None of these arguments requires reversal.

Audet was a master electrician employed for large construction jobs. He reported each morning at 7:30 a. m. to Field's shop in Lewiston, Maine, and drove one of Field's four radio-equipped trucks to one of various jobsites in other communities[1] where hospitals, schools or the like were being built, and where Audet himself was working. The district court found that while Audet "might derive some benefits from . . . use of the truck in order to get to the job, the essential purpose of such use of the truck was (a) to convey tools necessary for use on the job and (b) to transport certain necessary supplies [to] the job." There was evidence that the truck carried electrical supplies and tools, and that equipment in the trucks was on occasion used at the jobsite. There was evidence that several times a week Audet received instructions over the truck radio regarding the return of tools needed at other jobs. Other employees rode in the truck with Audet which he, as the senior electrician on the jobs to which he was assigned, regularly drove.

Audet and the other employees took a half-hour for lunch and left the jobsite at 4:00 in the afternoon, eight working hours after the 7:30 starting time. Audet then drove the truck back to Field's shop, and he and any other employees who had been on the truck drove their personal cars home. The truck was left at the shop and was not used by the employees at other times.

This dispute arose because, although Audet was paid starting at 7:30 and hence for the drive to the jobsite, he was not compensated for the return trip. The Secretary of Labor argued, and the district court found, that compensation was required, and at one and one-half times Audet's hourly rate because all time after 4:00 was overtime. Field has appealed.

---

1. Audet worked at jobs as far as 74 miles from Field's shop.

■■ Field argues, and there is evidence bearing him out, that use of the truck was of importance to Audet as a means of getting to the jobs. Audet testified, not unreasonably, that had he been forced to supply his own transportation to the various out of town sites, he would have quit. However, consistent with the above-quoted finding that the truck's essential purpose was to convey tools and equipment, the court also found that the trucks "were primarily utilized as an integral and indispensable function of the defendant business." We cannot say that these findings are clearly erroneous, F.R.Civ.P. 52(a), nor are they inconsistent with a benefit also having been bestowed upon Audet. It is irrelevant that Audet and the other employees might have reached the jobsite by personal transportation or that the employer might have stocked the jobsite without the use of the trucks. The activity is employment under the Act if it is done at least in part for the benefit of the employer, even though it may also be beneficial to the employee. "[T]he crucial question is not whether the work was voluntary but rather whether the [employee] was in fact performing services for the benefit of the employer with the knowledge and approval of the employer." Republican Publishing Co. v. American Newspaper Guild, 172 F.2d 943, 945 (1st Cir. 1949). Cf. United States. v. Rosenwasser, 323 U.S. 360, 362, 65 S.Ct. 295, 89 L.Ed. 301 (1945).

■ Field's second argument, that Audet had an arrangement within the scope of 29 U.S.C. § 207(g)(2) to accept different rates of pay for the "driving" and "electrical" aspects of his employment, is without foundation. The district court expressly found that "no such agreement was ever made." Field attempts to escape this finding by arguing that, although there was no "agreement", there was an "understanding." The evidence taken at trial shows that, after the employer had been alerted by the Department of Labor to the existence of a violation, Field held a discussion with Audet concerning the possibility of establishing such a two-scale system, and that the system then in force of paying for driving time in the morning but not in the afternoon was not altered, nor was there either "agreement" or "understanding" that an alteration would occur in the future.

■■ Perhaps Field's strongest argument is that the Portal to Portal Act excludes the driving time from the coverage of the Fair Labor Standards Act. The argument fails on several grounds, however. The Portal Act becomes inapplicable once the activity in question is compensable by "custom or practice in effect." 29 U.S.C. § 254(b)(2). Field's willingness to pay for the trip to the jobsite, noted by the district court, might constitute some evidence of such a practice. *Cf.* Ralph v. Tidewater Construction Corp., 361 F.2d 806 (4th Cir.), cert. denied 385 U.S. 931, 87 S.Ct. 294, 17 L.Ed.2d 213 (1966). More importantly, however, the Portal Act does not cover "any work of consequence performed for an employer." 29 C.F.R. § 790.8(a). *See* Mitchell v. King Packing Co., 350 U.S. 260, 76 S.Ct. 337, 100 L. Ed. 282 (1956); Steiner v. Mitchell, 350 U.S. 247, 76 S.Ct. 330, 100 L.Ed. 267 (1956). The purpose served by the truck was a disputed factual issue, and the district court's determination that use of the truck was a function of Field's business was adequately supported.[2] Accordingly we reject Field's contention that the Portal Act precludes coverage. *See* D A & S Oil Well Servicing, Inc. v. Mitchell, 262 F.2d 552 (10th Cir. 1958); Wirtz v. Gilbert, 267 F.Supp. 69 (D.R.I.1967). To the extent Tanaka v. Richard K. W. Tom, Inc., 299 F.Supp. 732 (D.Hawaii 1969), implies to the contrary, we decline to follow it.

Affirmed.

2. To the extent the truck benefitted other employees who did not have to drive their own cars to the site, Audet might also have been rendering services for his employer by acting as their chauffeur. Arguably his position would be different had he been a rider rather than the regular driver.