Jon MILLS, et al., Plaintiffs,

v.

STATE OF MAINE, Defendant.

Civ. No. 92–410–P–H.

United States District Court,
D. Maine.

June 1, 1994.

John R. Lemieux, Maine State Employees Ass'n, Augusta, ME, for plaintiffs.

Linda S. Crawford, Asst. Atty. Gen., Portland, ME, for defendant.

## ORDER ON A STIPULATED RECORD

HORNBY, District Judge.

In the liability portion of this dispute, I ruled that the State may treat its probation officers as employees working in a law enforcement capacity under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA"). Order on Cross–Motions for Summary Judgment (Dec. 21, 1993) 839 F.Supp. 3. The parties have now filed cross-motions on a stipulated record on four issues affecting what damages the State must pay the probation officers. I address them in turn.

### APPLICABILITY OF THE LAW ENFORCEMENT EXCEPTION

The first issue is whether the State should calculate past overtime on a 40– or a 43–hour workweek. The plaintiffs claim that the 43–hour workweek is available only to employers who have been complying with the requirements of the law enforcement exception, whereas the State has previously treated its probation officers as totally exempt from the Act. The plaintiffs claim, therefore, that the State should not now be allowed "to pretend" that it has treated them all along under the law enforcement exception.

*Martin v. Coventry Fire District,* 981 F.2d 1358 (1st Cir.1992), resolves this issue against the plaintiffs. In that case, the court held that an employer who violates § 207(k) of the FLSA (the partial exemption for firefighters and law enforcement officers) may still calculate the overtime owed its employees in accordance with the overtime definition of subsection (k). *Id.* at 1361. The court reasoned that the statute itself provides adequate compensation to the underpaid employees and punishment to the delinquent employer. Specifically, the employees receive what they should have been paid originally and, in addition, the employer must pay them double damages, if the violation was not reasonable and in good faith, and must suffer more serious penalties, if the violation was willful. *See* 29 U.S.C. §§ 216, 260. The First Circuit found no reason "for assessing an especially heavy penalty" on top of those already provided in the FLSA. *Martin,* 981 F.2d at 1360. Likewise, here, damages are to be determined in accordance with the subsection (k) overtime definition and the FLSA's express damage and penalty provisions.

The plaintiffs cite *Holmes v. Washington,* 30 WH Cases 1630, 1992 WL 247444 (W.D.Wash. Mar. 13, 1992), as holding that failure to comply with the recordkeeping requirements of § 207(k) deprives an employer of its defense. Generally, however, the significance of recordkeeping requirements in FLSA cases is not in determining the proper

measure of damages but in setting respective burdens of proof on liability. *See Secretary of Labor v. DeSisto,* 929 F.2d 789, 792 (1st Cir.1991). *Holmes* is not inconsistent with this principle; it recognized a recordkeeping violation only for purposes of determining liability and did not address the proper measure of damages. Consequently, the 43–hour workweek is available to the State.

### TREATMENT OF THE NON-STANDARD PAY PREMIUM

■ Probation officers receive a 16% pay premium under their collective bargaining agreement in exchange for being available at unusual hours and for more than 40 hours per week. The plaintiffs want to calculate their overtime at one and one-half times their total wages, the 16% included; the State wants not only to remove the 16% from the base figure before the time-and-a-half is applied, but also to use the 16% premium as an offset to any overtime found due. In certain situations, extra compensation is not included within an employee's regular rate of pay under the FLSA, 29 U.S.C. § 207(e), and sometimes the extra compensation is properly creditable toward unpaid overtime. *Id.* § 207(h). The 16% here, however, does not fit any of those categories.

Section 207(e)(7) excludes from the regular rate of pay a premium paid under a collective bargaining agreement

> for work outside of the hours established in good faith by the contract or agreement as the basic, normal, or regular workday (not exceeding eight hours) or workweek . . . where such premium rate is not less than one and one-half times the rate established in good faith by the contract or agreement.

This section, known as a "clock overtime" or "clock pattern" provision, is to accommodate those industries requiring round-the-clock operation. An employer in such an industry may comply with the FLSA by paying premiums equal to the statutory overtime rate for work during certain hours on the clock.

*Brock v. Wilamowsky,* 833 F.2d 11, 16 (2d Cir.1987). For instance, if 9 a.m. to 5 p.m. were the regular 8–hour workday and other hours were compensated at one and a half times the "9–to–5" rate, an employee working from 5 p.m. to 4 a.m. could be paid simply one and a half times the "9–to–5" rate for all of his hours of work, instead of an extra half again as much when he exceeded 8 hours. *See* 29 C.F.R. § 778.204(b).

Any premium, however, must be related to hours worked outside of a basic, normal or regular work period established in a collective bargaining agreement. The State contends that the collective bargaining agreement here specifies a premium to be paid in exchange for the probation officers working erratic hours in excess of 40 hours a week. Nowhere, however, does the State suggest that the collective bargaining agreement establishes the specific hours of a normal or regular workday or workweek as required by § 207(e)(7). Moreover, the 16% premium is part of a guaranteed periodic wage that is paid regardless of whether the plaintiffs actually "work outside of the hours established . . . as the basic . . . workweek." *See* Walo Depo. at 18–19; *cf. Brennan v. Valley Towing Co.,* 515 F.2d 100, 106 (9th Cir.1975). Consequently, the premium does not comply with the requirements of § 207(e)(7).

For the same reason, two other provisions that might allow the 16% premium to be excluded from the regular rate of pay, § 207(e)(5) and § 207(e)(6) are inapplicable.[1] Section 207(e)(5) excludes "a premium rate paid for certain hours worked by the employee . . . in excess of the maximum workweek applicable to such employee . . . or in excess of the employee's normal working hours or regular working hours." Section 207(e)(6) excludes "a premium rate paid for work . . . on Saturdays, Sundays, holidays, or regular days of rest." As already noted, the 16% premium is guaranteed income regardless of whether the employees work outside of their normal working hours, if any exist, and is not tied to "certain hours" or specific days worked by the employees.[2]

---

1. Sections 207(e)(1), (2) and (3) also specify compensation that is not includable in a regular rate of pay. Neither party has referred to these subsections, and I assume they do not apply.

2. *Brennan v. Valley Towing Co.,* 515 F.2d at 109, cited by the State, evaluated an "afterhours" pay structure consisting of non-guaranteed wage payments tied to the *actual* hours worked outside of a regular workweek, unlike the case here.

Extra compensation paid as described in § 207(e)(5), (6) or (7)—and only as described in one of those sections—is creditable toward overtime compensation owed. 209 U.S.C. § 207(h); 29 C.F.R. § 778.200(c). Since the 16% premium does not fit any of those provisions, it may not be credited toward the overtime compensation owed by the State.

The parties have also made passing reference to the "Belo" provision, § 207(f), exempting employees who work irregular hours but are paid fixed weekly compensation. The Belo provision is relevant to liability, not damages, and was not raised by the State during the liability phase of this dispute. Moreover, the State does not cite the Belo provision to challenge liability, but suggests that § 207(f) offers an alternative method of measuring overtime credits or the regular rate of pay. That is not so. Section 207(f) does not provide a separate rule for calculating damages once a violation of the FLSA is found to exist. *See* 29 C.F.R. § 778.403; *Martin v. David T. Saunders Constr. Co.*, 813 F.Supp. 893, 899, 902 (D.Mass.1992) (Keeton, J.) ("[W]hen a contract specifying weekly pay fails the requirements of § 207(f), the defendant is not entitled to credit its allocation of regular and overtime pay.")

## LIQUIDATED DAMAGES

■ Since I have ruled that the State violated the FLSA, it must show that it acted both reasonably and in good faith to avoid obligatory liquidated damages. 29 U.S.C. §§ 216, 260; 29 C.F.R. § 790.22(b); *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 908–09 (3d Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1473, 117 L.Ed.2d 617 (1992); *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 312 (7th Cir.1986). This duty is ongoing. The proper characterization of the State's conduct here rests upon what, if anything, the State did after 1985 to determine the appropriateness of continuing to treat its probation officers as completely exempt from the FLSA.

The State's own witnesses portray Freeman Wood in the Bureau of Human Resources as the decisionmaker responsible for approving the probation officers' treatment. They state that the Bureau of Human Resources was responsible for making such decisions, Tilton Aff. ¶ 18; Walo Depo. at 14, and that Freeman Wood, a Merit System Coordinator there, specifically "approved" the work of the job analysts who recommended the probation officers' treatment and was involved in the ultimate decision to consider them exempt. Walo Depo. at 14; Wood Depo. at 3–4, 8. Thus, the conduct of Wood and his work group is crucial. Wood's deposition testimony and affidavit tell patently conflicting stories about whether anyone ever reviewed the initial post-*Garcia* exemption decision. In his deposition, Wood acknowledged that neither he nor anyone in his work group revisited the overtime-exempt status of the plaintiffs after their original decision in 1985. Wood Depo. at 8–9. In Wood's affidavit, on the other hand, he claims to have discussed 1988 Department of Labor ("DOL") opinion letters with members of the Bureau of Human Resources, the Department of Corrections and counsel and to have "continued to review information and consider whether to change the exempt status." Wood Aff. ¶¶ 22–23. In order to determine whether the State fulfilled its ongoing duty to ascertain and comply with the FLSA's requirements, I must make sense of Wood's conflicting testimony.

I conclude that Wood's deposition testimony is more credible than his subsequently created affidavit. A deposition involves a witness's own spontaneous responses to questions. In this case, Wood's deposition was taken first and thus provides a more untutored recollection of events. Affidavits are usually drafted with the help of a lawyer for the strategic purpose of establishing specific facts. Here, Wood's affidavit makes no effort to explain its glaring inconsistency with the earlier deposition testimony (such as a refreshed recollection, for example), even though the inconsistency was apparent to the State. *See* Def.'s Statement of Material Facts ¶ 5. As a result, I credit the deposition and find that, while Wood was aware of post-*Garcia* DOL opinions and court rulings,

Wood Depo. at 9–10, 16, 28, he was not spurred to take reasonable steps to "revisit" the classification of probation officers.

Instead, I find that Wood entertained significant questions as a result of emerging caselaw, yet failed in any way to try to resolve them. The DOL opinions about which Wood knew each dealt with probation officers and the professional exemption. Wood states that the opinions "generated some questions in [his] mind." Wood Depo. at 9. Nevertheless, he did not discuss those questions with anyone else. Wood testified that he did not fully understand the functions played by the probation officers discussed in the opinions. Wood Depo. at 9–12. Yet he never made the effort to find out how those positions compared to Maine probation officers. Wood Depo. at 10. Specifically, he did not know and did not seek clarification from the Department of Corrections whether the reported positions required "the same type of social work" (on which the probation officers' classification so heavily relied) as Maine does. Wood Depo. at 11. Wood was the point person for ensuring the State's compliance with FLSA requirements. Based on his own account, however, his efforts to comply with the FLSA during the 1986 to 1992 period can only be described as unreasonably deficient, regardless of any possible good intentions.

The undisputed record does reveal some efforts by other State agents to follow up developments in the law. Although Wood and his team were responsible for keeping abreast of changes in the law, Wood Aff. ¶¶ 15, 22; Walo Depo. at 14, Peter Tilton, the Director of the Division of Probation and Parole, and the Department of Corrections were responsible for determining the duties of Maine's probation officers and comparing them to other states. Wood Aff. ¶ 22; Tilton Depo. at 14–15. Tilton states that following the 1988 and 1989 DOL opinion letter rulings he contacted representatives of other states to learn how they treated their probation officers with regard to the FLSA. Tilton Depo. at 15. Through contacting Utah, New Hampshire, Massachusetts, Missouri, New Jersey, Connecticut and Georgia, *id.* at 15–19, 26, Tilton discovered that there was a

"wide discrepancy concerning the perceived applicability of the FLSA." Tilton Aff. ¶ 23. He also compared the responsibilities of probation officers in Florida to those in Maine following the decision in *Dybach v. Florida Department of Corrections,* 942 F.2d 1562 (11th Cir.1991). Tilton Depo. at 19–21. As a result of his inquiries, Tilton "considered [Maine's probation officers] to be more professional than similar officers elsewhere." Tilton Aff. ¶¶ 22–24. Such case-by-case analysis was appropriate, because exemptions to § 207(a) are based on a job's specific responsibilities and requirements, not on a mere job title. *Reich v. Wyoming,* 993 F.2d 739, 742 (10th Cir.1993). An incorrect conclusion based on such an analysis could well have been reasonable. The State has not claimed, however, that the information compiled by Tilton was ever conveyed to anyone, let alone Wood and his team in the Bureau of Human Resources. *See* Wood Depo. at 30. Consequently, it cannot have provided any basis for the decision to continue treating the probation officers as exempt. Liquidated damages are therefore available.

### THE STATUTE OF LIMITATIONS

■ The plaintiffs may recover three years of back pay instead of the usual two years if they show that the State's violation was willful, that is, if the State knew it was violating the FLSA or showed reckless disregard for complying with the law. 29 U.S.C. § 255(a); *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115 (1988). Although I have found that the State acted unreasonably, that is not enough to establish a willful violation or reckless disregard for the law; more flagrant conduct is required. *Lopez v. Corporacion Azucarera de Puerto Rico,* 938 F.2d 1510, 1515 (1st Cir.1991); *cf. Mireles v. Frio Foods, Inc.,* 899 F.2d 1407, 1416 (5th Cir. 1990) (no reckless disregard where employer discussed law with state officials and reviewed some brochures and pamphlets). Here, the plaintiffs have not shown that the State acted willfully.

The State followed an organized procedure for determining the probation officers' original classification in 1985. A DOL represen-

tative met with and trained Wood and his team of job analysts about the FLSA. Wood Aff. ¶ 7. The analysts proceeded to evaluate over 800 state job classifications and recommend treatment under the FLSA. *Id.* 5–6. Wood approved those recommendations and circulated them to the affected agency for feedback and reevaluation before final decisions were made. *Id.* 8, 11. This system was a reasonable way to classify the probation officers in 1985. After 1985, there no longer was a clear procedure for how the Bureau of Human Resources, the Department of Corrections and other State offices ought to communicate about changes in the law. Nevertheless, the unrefuted record shows that State employees, including Wood, did monitor developments. Wood was aware of the DOL's 1988 letter rulings as well as subsequent court decisions. Wood Depo. at 9–10, 12, 16–17. He considered them, concluded that they did not address comparable positions and did not require any change in the probation officers' classification. Wood Depo. at 9–11, 17. I have found that Wood's conclusions, based on his admittedly incomplete understanding of the positions evaluated in those opinions, were unreasonable. Still, they do not amount to recklessness.[3] Wood made efforts to keep up with developments in the law, even if he did not adequately follow up. In addition, the State's reason for treating probation officers as exempt from the FLSA has been public and known to the plaintiffs all along. Yet they did not challenge their treatment until late 1992. Such circumstances suggest that Wood's conclusions were not so obviously misplaced as to amount to reckless disregard for the law. *Cf. Bratt v. County of Los Angeles,* 912 F.2d 1066, 1072 (9th Cir.1990), *cert. denied,* 498 U.S. 1086, 111 S.Ct. 962, 112 L.Ed.2d 1049 (1991); *Brock v. Claridge Hotel & Casino,* 711 F.Supp. 779, 784 (D.N.J.1989). Conse-

quently, only two years of back pay are available.

### CONCLUSION

I understand that the parties are attempting to reach an agreement on the number of hours worked. The Clerk's Office shall schedule a conference of counsel with me or the Magistrate Judge to determine whether judgment can now be entered or the nature of any trial or evidentiary hearing that is required.

SO ORDERED.

---

**3.** In *Taylor–Callahan–Coleman Counties v. Dole,* 948 F.2d 953 (5th Cir.1991), the court held that "[a]dvisory opinions issued by the Wage and Hour Administrator are to guide the DOL in its operations. They are neither final nor binding on employers or employees." *Id.* at 957. In addition, although the Eleventh Circuit found in 1991 that Florida's probation officers were not exempt professionals, *Dybach v. Florida Dep't of Corrections,* 942 F.2d 1562 (11th Cir.1991), the cases demonstrate that the applicability of the FLSA to governmental employees must be determined by a fact-specific evaluation. *See Taylor–Callahan–Coleman Counties,* 948 F.2d at 953; *Martin v. Wyoming,* 770 F.Supp. 612 (D.Wyo. 1991), *aff'd sub nom. Reich v. Wyoming,* 993 F.2d 739 (10th Cir.1993). Consequently, the State's failure uncritically to adopt *Dybach's* outcome was not reckless.