Derrick ANDREWS, Douglas P. Armey, Douglas L. Bower, Jr., Darlene A. Bowman, Stephen L. Chita, Thomas James Cooper, Alan F. Cunha, Jr., Kenneth J. Dawson, George S. Durrance, John W. Durrance, Jon Foresman, Susan E. Garcia, Ronald Gendron, Joseph P. Gonsalves, Franklin D.R. Goodman, Jr., Robert Gould, Paula Gouras, Raymond Harvey, Peter R. Ingersoll, Edward M. Johansen, Jr., Michael Kimber, Christopher F. Lakey, Virginia M. Lavoie, Terry Rooney, Anita N. Smith, Charles P. Smith, Christopher A. Souza, Leo C. Stevens, Bruce A. Szkil, Robert F. Thomas, John L. Troio, and Vincent P. Valley, Plaintiffs,

v.

Larry DUBOIS, as he is the Commissioner of the Department of Correction, Department of Correction, Mark Robinson, as he is Secretary of the Office of Administration and Finance, and The Office of Administration and Finance, Defendants.

Civ. A. No. 93–11338–WGY.

United States District Court,
D. Massachusetts.

May 3, 1995.

214

Matthew E. Dwyer, Lawrence P. Higgins, Grady and Dwyer, Boston, MA, for plaintiffs.

John W. Durrance, Leominster, MA, pro se.

Judy A. Levenson, Attorney General's Office, Boston, MA, for defendants.

### *MEMORANDUM AND ORDER*

YOUNG, District Judge.

The plaintiffs here move for partial summary judgment as to liability. Their motion presents two issues of first impression in the First Circuit, *viz.* (a) whether time spent by

correctional officers *caring for* police dogs at home is compensable work time under the Fair Labor Standards Act, and (b) whether time spent by correctional officers *transporting* the dogs to and from the prisons they patrol is compensable under the Fair Labor Standards Act. If either issue is decided in the affirmative, the Court will then decide whether as matter of law correctional officers are entitled to a two- or three-year statute of limitations period and whether they are entitled to liquidated damages.

## I. BACKGROUND

The plaintiffs, correctional officers at the Massachusetts Department of Correction (the "officers" or the "employees"), bring this suit against their employer (the "Department of Correction" or the "Department")[1] under the Fair Labor Standards Act, 29 U.S.C.A. § 216(b) (West Supp.1993), as amended by the Portal–to–Portal Act, 29 U.S.C.A. § 251 et seq. (West 1985) (collectively, the "Act"), to recover overtime compensation due for hours worked in excess of forty hours per week.

At various times from June 17, 1990 to March 9, 1994, the correctional officers were employed by the Department's canine unit.[2] Plaintiffs' Memorandum of Law in Opposition to Defendants' Cross Motion for Partial Summary Judgment ("Opposition to Cross Motion") at 2.[3] As part of their responsibilities, the employees kept one or more dogs—which are the property of the Department of Correction—at their homes. The dogs were domiciled with their respective officers seven days a week including holidays and vacations. *See* Plaintiffs' Joint Affidavit in Support of Their Motion for Summary Judgment ("Joint Affidavit") ¶¶ 8, 9, 11. Officers enrolled in the home domicile program were responsible, on a daily basis, for the proper care, grooming, cleaning, feeding, exercising, and training of their dogs.[4] The officers were required to transport the dogs to and from the correctional facilities each day that they were scheduled to work. *See* Joint Affidavit ¶ 19. Some of the officers were given Department vehicles for the purpose of transporting the dogs, for which the Department paid the cost of gasoline and maintenance. Others used their own vehicles to transport the dogs. The officers allege that it was customary for authorized officials in the Department to take the dogs, then in their home custody, to unscheduled, emergency situations involving substantial demands on the affected officers' time. Employees were also responsible for taking the dogs in their home custody for veterinary care and to attend regularly scheduled canine demonstrations.

The officers allege that on average they spent three to four hours per day—above and beyond their regular eight hour shifts—both *taking care of* the dogs and *transporting* the dogs to and from the correctional facilities. They now seek overtime compensation for this "work" performed outside their regularly scheduled shifts.

The officers have moved for partial summary judgment as to liability, statute of limitations, and damages. The Department cross-moved for partial summary judgment on the officers' claim for overtime pay for the time spent commuting to and from work with the dogs, arguing that under the Act com-

---

1. The officers have also named Larry DuBois, Commissioner of the Department of Correction, the Executive Office of Administration and Finance, and Mark E. Robinson, as he is Secretary of the Office of Administration and Finance. As Mark Robinson is no longer employed by the Commonwealth of Massachusetts, he is therefore dismissed from this suit and his successor, Charles Baker, is substituted pursuant to Federal Rule of Civil Procedure 25(d)(1).

2. At all times the employees worked a regular forty-hour work week.

3. Since June 17, 1990, the terms of the officers' employment have been governed by a collective bargaining agreement between the Commonwealth of Massachusetts and the Massachusetts Correction Officers Federated Union. Pursuant to this agreement, the officers are entitled to overtime compensation for all hours worked in excess of forty hours per week since June 17, 1990. *See* Plaintiffs' Memorandum of Law in Support of Their Motion for Partial Summary Judgment ("Plaintiffs' Memorandum") at 2–3.

4. The home domicile program of the Department of Correction was terminated as of March, 1994, when the Department completed the construction of on-site kennels at each Department facility.

muting time is not compensable as matter of law.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as matter of law. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). "The moving party is entitled to judgment as a matter of law if the nonmoving party does not adduce enough evidence to permit a reasonable trier of fact to find for the nonmoving party on any element essential to its claim." *Milton v. Van Dorn Co.*, 961 F.2d 965, 969 (1st Cir.1992). In making this determination, the court must "scrutinize the summary judgment record in the light most congenial to the [nonmovant and] indulge all reasonable inferences in that party's favor." *Vasapolli v. Rostoff*, 39 F.3d 27, 32 (1st Cir. 1994).

### B. Time Spent Caring for the Dogs

██ The Fair Labor Standards Act requires covered employers to compensate employees at, at least, a minimum wage for all hours worked. 29 U.S.C.A. § 206(a) (West 1978 & Supp.1993); *see Graham v. City of Chicago*, 828 F.Supp. 576, 578–79 (N.D.Ill. 1993). The Act requires that when an employee works more than forty hours per week, the employee must be compensated at a rate of one-and-one-half times the regular rate of payment. 29 U.S.C.A. § 207(a) (West Supp.1993). The Act states, however, that

> no employer shall be subject to any liability ... on account of the failure of such employer to pay an employee ... [for] activities which are *preliminary* to or *postliminary* to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the

time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C.A. § 254(a)(2) (West 1985) (emphasis added). Thus, the first question before the Court is whether time spent caring for police dogs at home is a principal activity of the officers' jobs or merely a preliminary or postliminary activity.[5] The term "principal activity" has been interpreted by the Supreme Court to include any activity that is "an integral and indispensable part of the principal activities for which covered workmen are employed ..." *Steiner v. Mitchell*, 350 U.S. 247, 256, 76 S.Ct. 330, 335, 100 L.Ed. 267 (1956) (employees working in battery manufacturing plant in which toxic materials were used and who were compelled by considerations of health and hygiene to change clothes before and after work and to shower after work were engaging in principal activities that must be compensated under the Act). In *Steiner*, the Court stated that the activities which are integral and indispensable are those that (1) "are made necessary by the nature of the work performed;" (2) "fulfill mutual obligations between [employers] and their employees;" (3) "directly benefit [the employers] in the operation of their business;" and (4) "are so closely related to other duties performed by [the] employees as to be an integral part thereof." *Id.* at 252–53, 76 S.Ct. at 333–34. In other words, the test for principal activities and integral and indispensable parts of such activities is whether they are "performed as part of the regular work of the employees in the ordinary course of business." *Dunlop v. City Elec., Inc.*, 527 F.2d 394, 401 (5th Cir. 1976).

Here, the principal activities for which the officers are employed are canine-assisted vehicle and foot patrol of state correctional institutions and canine-assisted response to emergency situations. *See* Joint Affidavit ¶ 4. In this regard, the canines are security equipment without which the officers' princi-

---

5. The First Circuit has held that the determination of whether an activity is an integral and indispensable part of the employees' principal activity is a question of law appropriate for resolution at summary judgment. *See Ballou v. General Elec. Co.*, 433 F.2d 109, 111 (1st Cir.1970),

cert. denied, 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971). *But see Nichols v. City of Chicago*, 789 F.Supp. 1438, 1441 (N.D.Ill.1992) (whether activity preliminary or postliminary question of fact).

pal activities could not be performed. Feeding, grooming, and walking the dogs are therefore indispensable (albeit incidental) parts of maintaining the dogs as law enforcement tools; they are activities that are closely related to the work duties of a canine officer. *See Steiner,* 350 U.S. at 252–53, 76 S.Ct. at 333–34. Moreover, time spent feeding, grooming, and walking the dogs is time the officers do not have to themselves. Thus, this Court rules that these activities are performed as part of the regular work of the canine officers in the ordinary course of business, and are therefore not preliminary or postliminary activities. *See Dunlop,* 527 F.2d at 401. Time spent on these activities is time spent working.

Significantly, the majority of courts that have applied the *Steiner* test to the question of canine home care have likewise determined that time spent caring for police dogs is an integral and indispensable part of the officers' regular work. *See Reich v. New York City Transit Auth.,* 45 F.3d 646, 650–51 (2d Cir.1995) (walking, feeding, grooming, training, and cleaning up after police dogs are integral and indispensable parts of handler's principal activities and are compensable under the FLSA); *Udvari v. United States,* 28 Fed.Cl. 137, 139–40 (1993) (time spent caring for police canines may be compensable work but claim barred by statute of limitations); *Truslow v. Spotsylvania County Sheriff,* 783 F.Supp. 274, 279 (E.D.Va.1992) (granting plaintiff's motion for summary judgment on issue of liability because attendance at canine training sessions, unscheduled emergency canine calls, and required attendance at canine demonstrations are "plainly" integral and indispensable parts of officer's principal activities as deputy sheriff), *aff'd,* 993 F.2d 1539 (4th Cir.1993).

■ First Circuit precedent likewise supports this ruling. Although the First Circuit has never explicitly addressed the canine care issue, this circuit has held, in another context, that an activity constitutes employment under the Act if done at least in part *for the benefit of the employer. See Secretary of Labor v. E.R. Field, Inc.,* 495 F.2d 749, 751 (1st Cir.1974).[6] In this instance, the care of the dogs by the police officers clearly benefitted the Department of Correction. With the dogs cared for at home by the officers at minimal cost to the state, the Department did not have to send the dogs to professional kennels for lodging and grooming. Also, allowing police officers to keep their dogs at home facilitated the "bonding" process between the animals and the officers. This process bred dogs more loyal to their handlers and therefore more effective for the Department.[7]

Because canine care is necessary to maintain the animals as critical law enforcement tools, and because the First Circuit has held that activities undertaken even in part for the benefit of the employer are compensable, the officers' motion for partial summary judgment on the issue of liability for time spent caring for the dogs at home is **GRANTED.**

### C. Time Spent Commuting with the Dogs

■ The Department of Correction correctly notes that the Act explicitly excludes ordinary commuting time from coverage. It states:

> [N]o employer shall be subject to any liability ... on account of the failure of such employer to pay an employee ... [for] walking, riding, or traveling to and from the actual place of performance of the

---

**6.** The fact that the officers might also benefit from the companionship of the dog is not determinative. *See E.R. Field,* 495 F.2d at 751. To the contrary, "[t]he activity is employment under the Act if it is done at least in part for the benefit of the employer, even though it may also be beneficial to the employee." *Id.*

**7.** The fact that feeding and otherwise caring for the animals may not take a great deal of time each day is not dispositive of this issue. *See Truslow,* 783 F.Supp. at 278 (the amount of time

spent on a given activity is not determinative of whether it is a principal activity or merely a preliminary or postliminary one). Likewise, the fact that the officers may have volunteered to work in the canine unit does not preclude them from recovering compensation due them under the Act. *See E.R. Field,* 495 F.2d at 751 (the fact that an employee volunteers for the activity does not mean it is not compensable under the Act); *Truslow,* 783 F.Supp. at 278.

principal activity or activities which such employee is employed to perform ... 29 U.S.C.A. § 254(a)(1) (West 1985).[8] The Department argues that the mere presence of dogs during the commute to work does not transform otherwise noncompensable travel time into compensable work time and that the only compensable work time—if any there be—is the time during the commute in which the officers actively cared for the dogs, which (by the officers' own admission) is negligible. On the other hand, the officers maintain that transporting the dogs is an integral part of the officers' principal activity. In support of this proposition, the officers marshal three distinct arguments.

First, the officers argue that if caring for the dogs at home is compensable work—as this Court has now ruled that it is—then the home is in fact an alternative work site. Thus, the act of transporting the dogs between home and the correctional facilities is merely an act of traveling from one work site to another and is therefore not preliminary or postliminary to the officers' principal duties. *See Graham v. City of Chicago*, 828 F.Supp. 576, 582 (N.D.Ill.1993) (adopting this reasoning in holding that time spent transporting police canines to and from work is compensable under the Act); *see also Secretary of Labor v. E.R. Field*, 495 F.2d 749, 751 (1st Cir.1974) (electrician who drove employer's truck loaded with equipment from various work sites after the eight hour day entitled to back pay under the Act).

Although this reasoning makes sense temporally—the transportation of the dogs takes place after the officers have begun their principal duties and ends before they complete them—it nevertheless defies both the plain language of the statute and common sense. As stated above, the Act explicitly states that commuting time is not compensable. *See* 29 U.S.C.A. § 254(a)(1) (West 1985). This language is controlling. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 570, 102 S.Ct. 3245, 3249, 73 L.Ed.2d 973 (1982) (where will of Congress expressed in reasonably plain terms, that language is ordinarily conclusive);

Office of Legal Policy, Report to the Attorney General—Using and Misusing Legislative History: A Reevaluation of the Status of Legislative History in Statutory Interpretation 71 (1989) (so long as the legislative intent is made reasonably plain in the statute's text, that language controls). Moreover, common sense tells us that employees should not be compensated for doing what they would have to do anyway—getting themselves to work. This Court therefore rejects the officers' first argument.

Next, the officers contend that the transportation of the dogs is a service which directly benefits the employer. Thus, they argue that under the First Circuit's reasoning in *E.R. Field*, it is compensable work. *See* 495 F.2d at 751. Although it is true that the transportation of the dogs *indirectly* benefits the employer—by getting the dogs to the job site—this Court does not interpret *E.R. Field* so liberally. Indeed, to do so would lead to absurd consequences. For example, the Department is also benefitted by the fact that the dogs *sleep* at the homes of the officers, but not even the plaintiffs here have alleged that the Act requires them to be compensated for round-the-clock care because they house the dogs. Therefore, the transportation of the animals alone cannot support a claim for compensation of travel time. *See Levering v. District of Columbia*, 869 F.Supp. 24, 29 (D.D.C.1994).

Third, the officers argue that because the Department requires them to transport the dogs to and from the correctional facilities, the transportation of the dogs should be compensable. They argue that this requirement is the functional equivalent of requiring them to transport heavy equipment which is explicitly compensable under regulations promulgated pursuant to the statute. The regulations state:

An employee who walks, rides or otherwise travels while performing active duties is not engaged in activities described in [the Portal-to-Portal Act]. An illustration of such travel would be the carrying by a logger of a portable power saw or other

---

**8.** This section can be overcome by an express contract to the contrary or a custom or practice in effect. 29 U.S.C.A. § 254(b) (West 1985).

*heavy equipment* (as distinguished from ordinary *hand tools*) on his trip into the woods to the cutting area. 29 C.F.R. § 790.7(d) (1994) (emphasis added); *see also Crenshaw v. Quarles Drilling Corp.,* 798 F.2d 1345, 1350 (10th Cir.1986) (time spent travelling to job site is compensable where employee transports equipment integral and indispensable to performance of principal activity); *Wirtz v. Gilbert,* 267 F.Supp. 69, 72 (D.R.I.1967) (as travel time of employee involved the driving of a truck for the transportation of heavy equipment to and from the work site, it was integral and indispensable to principal activities and thus compensable). Employees argue that because the dogs each weigh in excess of 60 pounds, see Joint Affidavit ¶ 18, the transportation of these animals is similar to the transportation of heavy equipment. On the other hand, the Department argues that transportation of the canines is not like transporting heavy equipment, but rather, is akin to transporting fellow employees between home and work which is not compensable. *See Wirtz v. Marino,* 405 F.2d 938, 940 n. 7, 942 (1st Cir.1969) (transporting other employees to and from job site without increasing travel time is not compensable). In the context of canine care, other courts have determined that the transportation of police dogs to and from a particular work site is not analogous to the transportation of heavy artillery, but rather is more akin to the requirement that police officers carry their guns to and from work. *See, e.g., Levering,* 869 F.Supp. at 28. This Court agrees.

■ From the record, it appears that the presence of the dogs during the travel to and from work rarely adds even marginal amounts of time to the officers' regular commute. While it is true that loading the animals in and out of the car requires some degree of time and effort, this effort is so negligible as to be *de minimis* and therefore not compensable. *See Reich v. New York City Transit Auth.,* 45 F.3d 646, 652 (2d Cir.1995); *see also Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 692, 66 S.Ct. 1187, 1194, 90 L.Ed. 1515 (1946) ("When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded.");

*Lindow v. United States,* 738 F.2d 1057, 1063 (9th Cir.1984) (otherwise compensable time may be considered *de minimis* where the size of the claim, even in the aggregate, is negligible and recording such additional time would pose administrative difficulties). Because the officers would make the same commute each day irrespective of the dogs, the commute itself is not integral to the officers' principal duties. The fact that transportation of the dogs is required and incidentally benefits the employer is not dispositive. Thus, time spent commuting with the canines is not compensable under the Act.

This conclusion is supported by an array of precedent. *See Reich,* 45 F.3d at 650–51 (time spent commuting with canines is *not* compensable unless time was spent on the commute actively caring for the dogs); *Levering,* 869 F.Supp. at 29 (although officers were entitled to compensation for time spent exercising, feeding, and otherwise caring for dogs, they were not entitled to compensation for time spent transporting canines to and from work); *Truslow v. Spotsylvania County Sheriff,* 783 F.Supp. 274, 277 n. 5 (E.D.Va.1992) (although off-duty time spent caring for police canines is an integral and indispensable part of officers duties compensable under the Act, as matter of law defendants are not required to compensate plaintiff for time spent commuting to and from work with the dogs). *But see Graham v. City of Chicago,* 828 F.Supp. 576, 578 (N.D.Ill.1993). Thus, the majority of cases that have confronted the issue of police officers commuting with their dogs—even those that have held home-care of the dogs to be compensable—have concluded that such activity is explicitly excluded by the Act and that officers should not be compensated for doing what they would have to do anyway—getting themselves to work. *Cf. Fausner v. Commissioner of Internal Revenue,* 413 U.S. 838, 838–39, 93 S.Ct. 2820, 2821, 37 L.Ed.2d 996 (1973) (per curiam) (commercial airline pilot may not deduct commuting expenses merely because he had to carry travel and overnight bags with him, as he would have to commute anyway and the tax code does not transform personal into business expenses due to "happenstance" that taxpayer must

carry incidentals of his occupation with him to and from work). For these reasons, the Department's motion for partial summary judgment on the issue of liability for commuting time is **GRANTED.**

### D. Liability Period

Since the Department is liable to the officers for the time spent caring for the dogs at home, the Court must move on to address the damage issues presented on this record.

■■■ The Act allows employees to recover back wages for the two years prior to the commencement of the lawsuit. 29 U.S.C.A. § 255(a) (West 1982). If, however, the employer's violation of the Act is *willful,* the statute allows employees to recover three years of back pay. *Id.* The officers argue that here the violation was indeed willful and thus this Court should declare as matter of law that the officers are entitled to back wages for canine home care for a three-year period. The Department counters that its failure to compensate the officers for time spent caring for the dogs at home was not a willful violation of the Act, but rather a mere failure to anticipate the application of the law to such circumstances.

The Supreme Court has stated that an employer's violation is "willful" within the meaning of the Act where it can be shown that the employer knew or acted with reckless disregard of whether it was violating the statute. *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115 (1988); *Reich v. Newspapers of New England, Inc.,* 44 F.3d 1060, 1079 (1st Cir.1995).

■■■ The record here is void of genuine disputes. Both the officers and the Department agree that the Department was aware of the Act's requirements with respect to state institutions. Indeed, both sides point to the extensive conferences attended and materials received by Department officials as evidence to support their respective positions. The officers argue that because the

Department's personnel director was fully aware that records had to be kept of all hours worked by state employees and that all such hours must be compensated, failure to pay the officers or keep records with respect to canine home care indicates willful violation of the law. This argument fails as matter of law. *See Newspapers of New England, Inc.,* 44 F.3d at 1080 (evidence that employer was aware of Act's requirements does not prove that employer acted willfully); *Mills v. Maine,* 853 F.Supp. 551, 555 (D.Me.1994) (citing *Mireles v. Frio Foods, Inc.,* 899 F.2d 1407, 1416 [5th Cir.1990] [no reckless disregard where employer discussed the Act with state officials and reviewed brochures and pamphlets]). The evidence proffered by both parties indicates that the personnel officers of the Department were at the very least attempting to educate themselves as to their responsibilities under the law. The Department simply did not anticipate this particular application of the law.[9] Regardless of whether the failure to anticipate such a problem was *reasonable, see infra,* it does not amount to a willful violation of the Act. Thus, at a minimum, the officers' motion for summary judgment with respect to the limitation period must be **DENIED.**

■■■ Although the Department has not cross-moved for summary judgement on this issue, the Court has the power to grant summary judgment for the non-moving party even without a cross-motion as long as "great care [is] exercised to assure that the original movant has had an adequate opportunity to show that there is a genuine issue and that his opponent is not entitled to judgment as a matter of law." 10A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE Civil 2d § 2720, at 29–34 (2d ed. 1983 & Supp.1994); *Jardines Bacata, Ltd. v. Diaz–Marquez,* 878 F.2d 1555, 1560 (1st Cir. 1989) (district court may grant summary judgment on its own initiative, coincident with its decision to deny movant's summary judgment motion); *National Expositions,*

---

9. The Department further argues that because no employees requested overtime compensation for their alleged "work" prior to the filing of this suit, the Department could not have acted willfully or in bad faith. This reasoning is flawed.

The employees' state of mind or awareness of the law is irrelevant to the question of employer willfulness. Rather, the significant inquiry is the employer's knowledge, awareness, and motivation.

*Inc. v. Crowley Maritime Corp.,* 824 F.2d 131, 133 (1st Cir.1987) (Breyer, J.) (justifying district court's *sua sponte* grant of summary judgment against movant without non-movant filing cross-motion). Because the First Circuit has held as matter of law that an employer's awareness of the requirements of the Fair Labor Standards Act alone cannot constitute willfulness, the Court now grants summary judgment for the Department.

### E. Liquidated Damages

 Once it has been determined that the State violated the Act, it must show that it acted reasonably and in good faith in order to avoid liability for liquidated damages. *See* 29 U.S.C.A. § 216(b) (West Supp.1993); 29 U.S.C.A. § 260 (West 1985); *see also Mills v. Maine,* 853 F.Supp. 551, 554 (D.Me.1994); *Reich v. Newspapers of New England, Inc.,* 834 F.Supp. 530, 542 (D.N.H.1993), *aff'd,* 44 F.3d 1060 (1st Cir.1995). Here the burden of proof rests with the Department. The standard for determining whether or not to grant liquidated damages is whether the employer "acted in good faith and had reasonable grounds for believing that its acts did not violate [the Act]." *D'Camera v. District of Columbia,* 722 F.Supp. 799, 800 (D.D.C. 1989); *see also Mills,* 853 F.Supp. at 554; *Newspapers of New England,* 834 F.Supp. at 542. "The 'good faith' requirement is subjective and requires proof that the employer had an honest intention to ascertain and follow the requirements of the statute. The 'reasonableness' requirement is an objective one, and ignorance alone does not serve to exonerate the employer." *Newspapers of New England,* 834 F.Supp. at 542 (citations omitted). Thus, it is theoretically possible that an employer's conduct may be held not to be willful (for the purposes of ascertaining the appropriate limitations period), while at the same time an employer may be unable to meet his burden of proving good faith and reasonableness (for the purposes of determining whether liquidated damages are appropriate). So it is here. While it appears undisputed that the Department was attempting to comply with the Act, it is unclear whether the efforts to do so were reasonable under all the attendant circumstances. While this is a matter for the Court to deter-

mine as fact finder, the present record on the point is not sufficiently developed, especially since the Court must draw all inferences against the officers as the moving parties. Accordingly, the officers' motion for summary judgment on this issue is *DENIED.*

### III. CONCLUSION

For the reasons stated above, the officers' motion for partial summary judgment on the issue of home-care liability is *GRANTED* and the Department's cross-motion for partial summary judgment on the issue of liability for commuting time is likewise *GRANTED.* On the issue of willfullness, summary judgment is *GRANTED* for the Department. The officers' motion for partial summary judgment on the issue of liquidated damages is *DENIED.* Any forthcoming trial is limited to the question of damages.