<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 United States Court of Appeals
                     For the First Circuit
                      ____________________

No. 97-2103

                         STEVEN ROMAN,

                     Plaintiff - Appellant,

                               v.

                  MAIETTA CONSTRUCTION, INC.,

                     Defendant - Appellee.

                      ____________________

          APPEAL FROM THE UNITED STATES DISTRICT COURT

                   FOR THE DISTRICT OF MAINE

          [Hon. David M. Cohen, U.S. Magistrate Judge]

                      ____________________

                             Before

                    Torruella, Chief Judge,

                 Bownes, Senior Circuit Judge,

                   and Stahl, Circuit Judge.

                     _____________________

   Donald F. Fontaine, with whom Lynne A. Gardner, Fontaine &
Beal, P.A., Thomas H. Somers and Hoff, Curtis, Pacht, Cassidy &
Frame, P.C., were on brief for appellant.
   Graydon G. Stevens, with whom Kelly, Remmel & Zimmerman, was
on brief for appellee.

                      ____________________

                         July 2, 1998
                      ____________________

         TORRUELLA, Chief Judge.  Plaintiff Steven Romn filed
this action against his former employer Maietta Construction, Inc.
("Maietta") for back pay plus liquidated damages under section
16(b) of the Fair Labor Standards Act ("FLSA").  Romn also joined
pendent state claims for unpaid wages and overtime pay under 26 Me.
Rev. Stat. Ann.  670, 626-A.  While the trial court ultimately
awarded plaintiff $2,436 plus costs and reasonable attorney's fees,
it denied Romn's claim for compensation for time spent at the race
track as a crew chief for stock cars raced by the son of Maietta's
owner.  The court also rejected plaintiff's claim for damages under
26  Me. Rev. Stat. Ann.  626-A.  Romn appeals these portions of
the judgment.  He also challenges certain factual findings as well
as the trial court's calculation of damages.  We affirm.
                         I.  BACKGROUND     The following facts are largely undisputed.  We summarize
disputed facts in a manner consistent with the district court's
supportable findings of fact.  See United States v. Gallo, 20 F.3d
7, 9 (1st Cir. 1994).
         Romn became interested in stock car racing in the late
1970s.  Prior to 1984, he owned and raced two stock cars, serving
as crew chief for these cars and paying the drivers a percentage of
the winnings.  During this time, he also served as crew chief for
two stock cars that he did not own.  He considered the members of
the crews on the cars that he owned to be volunteers and did not
compensate them.  Moreover, he was not paid for his work as crew
chief on the cars that he did not own, and in fact, considered
himself a volunteer when he worked in that capacity.
         Romn met Michael Maietta, Sr. ("Michael"), a son of the
owner of Maietta, at the race track where both of them did most of
their racing.  In 1984, Romn provided building and repair services
for the stock cars raced by Michael at Romn's body shop in
Windham, Maine.  Romn was paid for these services.  At the time,
Romn made his living from the body shop.  In 1985, Romn began
serving as crew chief for Michael's stock cars.  He performed this
work as a volunteer.  His duties as crew chief for the stock cars
included being present at weekly races from April through October
every year.  Races were usually held on Saturdays, although some
races occurred on Sundays or on Friday or Wednesday nights.  
Occasionally, there were two races in a week.
         Maietta advertised at the race track where Michael raced,
most often as part of a package deal that it arranged with the
owner of the track.  Maietta provided some parts and services, but
no cash, to Michael in connection with his racing, and the
company's name was painted on Michael's stock cars as a sponsor.  
At all relevant times, the construction company did not own these
stock cars.
         In 1987, Romn asked Michael whether Maietta could hire
him to work as a welder.  Michael is not and never has been an
officer, owner, or director of Maietta, although he was employed by
the company in a supervisory position.  Michael approached his
father, Louis Maietta, Sr. ("Louis Sr."), with this request and
Louis Sr. approved the hiring of Romn as a welder at $12 per hour.  
Romn was employed by Maietta from the fall of 1987 through
June 26, 1995.
         The year Romn was hired, Louis Sr. gave Michael
permission to move his stock cars from Romn's Windham shop to the
construction company's business premises in Scarborough, Maine, on
the condition that no one work on the cars during regular business
hours.  However, Romn regularly worked on the stock cars during
business hours.  He recorded all of the time during which he worked
on the stock cars at Maietta's premises on his time cards, which
were processed through the company's time clock.  All of the
supervisors at the premises, who were sons of Louis Sr., were aware
of these activities but did not direct Romn to stop.  Whenever
Louis Sr. learned that Romn was working on the stock cars during
business hours, he would tell Romn to stop or tell one of his sons
to tell Romn to stop.  However, Louis Sr.'s sons continued
thereafter to permit Romn to work on the stock cars while on the
firm's time clock.  Romn was paid by Maietta for all the hours he
recorded, including the hours spent working on the stock cars.
         In 1989, Romn's pay was increased to $16 per hour.  He
was frequently paid time and one-half by Maietta for overtime
hours.  Romn spent many of these hours working on Michael's stock
cars.  At some time during his employment, Romn and Louis Maietta,
Jr. ("Louis Jr."), one of Louis Sr.'s sons and vice-president and
a director of Maietta, agreed that any hours over 40 hours in a
given week spent by Romn working on the stock cars at Maietta's
business premises would be "held" rather than included in his
paycheck for that week.  Payment for these held hours was
accomplished in stages by paying him on the basis of a 40-hour work
week in weeks when he, in fact, worked fewer than 40 hours.  Romn
and Maietta, acting through Louis Jr., referred to these held hours
as "compensatory time."  They also agreed that Romn could take
compensatory time off in exchange for held hours.   Between June 9,
1993 and August 24, 1994, Maietta held a total of 120.75 hours from
Romn's time cards.  During this same time period, Maietta paid
Romn for a total of 105 hours in compensatory time at the rate of
$16 per hour.
         In August 1994, Romn sustained an injury while working
at Maietta.  He returned to work in November 1994, but his
relationship with the company and with Michael deteriorated
thereafter.  Romn did not serve as Michael's crew chief after the
1994 season.  After Romn ceased working for the construction
company on June 26, 1995, he filed this action under the FLSA for
additional wages he contended were due to him.  In particular, the
plaintiff sought back pay for serving as Michael's crew chief
during weekend races.  He also joined pendant state law claims.
         Both parties consented to having a magistrate conduct all
proceedings in the case pursuant to 28 U.S.C.  636(c).  Following
three days of hearings, the magistrate determined that, under the
FLSA, the plaintiff was entitled to overtime pay for all
compensatory time.  The court awarded the plaintiff an additional
$8 per hour for the 105 hours of compensatory time for which he had
received only $16 per hour, and awarded the overtime rate of $24
per hour for the 15.75 hours of compensatory time for which he was
not paid, for a total of $1,218.  The trial court also ruled that,
under both the FLSA and state law, Romn was entitled to liquidated
damages in the amount of the unpaid overtime plus costs and
attorney's fees.  Thus, the magistrate rendered judgment for Romn
in the amount of $2,436 plus costs and reasonable attorney's fees.  
However, the trial court denied back pay for Romn's services as
Michael's crew chief.  In addition, the trial court found that
Romn was not entitled to damages in excess of those provided by
the FLSA because the FLSA was the exclusive remedy for the
enforcement of rights created under the act.  On appeal, Romn
challenges these aspects of the judgment.
                        II.  DISCUSSION
         We review a trial court's findings of fact for clear
error and its application of the law to the facts de novo.  SeeReich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997).
         A.   Factual Findings
         Romn challenges the trial court's finding of fact that,
prior to joining Michael's racing team, the plaintiff considered
himself a volunteer when he served as crew chief on two stock cars
he did not own.  We find no clear error in the court's
determination.  With respect to one of the cars, Romn specifically
testified, "I was a volunteer."  In addition, plaintiff testified
that his crew chief activities turned from sport to work when he
joined Michael's crew.  The court could have reasonably concluded
from this testimony that Romn considered himself a volunteer on
any stock car he worked on prior to Michael's stock cars.  
Accordingly, we see sufficient record support to affirm the trial
court's finding that Romn was a volunteer on the two stock cars at
issue.
         Romn also disputes the trial court's factual finding
that the construction company contributed no cash to Michael's
racing activities, citing to various portions of the trial
transcript which provide some backing for his challenge.  However,
other parts of the transcript, such as Michael's testimony that he
received no cash from the construction company for his racing team,
corroborate the trial court's finding.
         Undoubtedly, Maietta provided some financial support for
Michael's racing endeavors.  Nevertheless, we are not convinced
that the record clearly establishes that the company made cash
contributions to Michael for his racing team.  "A finding of fact
is clearly erroneous when the reviewing court is left with the
definite and firm conviction that a mistake has been made."  
Mitchell v. United States, 141 F.3d 8, 17 (1st Cir. 1998).  Lacking
such a conviction, we rule that the trial court did not commit
clear error in finding that Maietta did not provide funding to
Michael in connection with his stock car racing.
         B.   Romn's Crew Chief Activities
         Romn challenges the trial court's conclusion that the
weekend time he devoted to his crew chief activities for Michael's
stock cars was not compensable under the FLSA.  The FLSA provides
in relevant part that "no employer shall employ any of his
employees . . . for a workweek longer than forty hours unless such
employee receives compensation for his employment in excess of
[forty] hours . . . at a rate no less than one and one-half times
the regular rate at which he is employed."  29 U.S.C.  207(a).  
The act "defines the verb 'employ' expansively to mean 'suffer or
permit to work.'"  Nationwide Mut. Ins. Co. v. Darden, 503 U.S.
318, 326 (1992); see also 29 U.S.C.  203(g).  "The employer-
employee relationship does not lend itself to rigid per se
definitions, but depends 'upon the circumstances of the whole
activity.'"  Reich v. ConAgra, Inc., 987 F.2d 1357, 1361 (8th Cir.
1993) (citing Marshall v. Truman Arnold Distrib. Co., Inc., 640
F.2d 906, 908 (8th Cir. 1981)).  Viewing Romn's activities as a
whole, we agree with the trial court that the FLSA does not require
Maietta to compensate Romn for his crew chief duties at the race
track.
         Maietta hired Romn to work as a welder on its business
premises.  However, the record reflects that he spent a substantial
amount of his time at the job site working on Michael's stock cars.  
Romn contends that since he performed the same type of work on the
stock cars at the race tracks, his weekend racing activities were
an extension of his workweek.  Thus, according to the plaintiff, he
is entitled to compensation for any time spent as Michael's crew
chief.
         The FLSA applies to "physical or mental exertion (whether
burdensome or not) controlled or required by the employer and
pursued necessarily and primarily for the benefit of the employer
and his business."  Tennessee Coal, Iron & R.R. Co. v. Muscoda
Local No. 123, 321 U.S. 590, 598 (1944).  Several of Romn's
supervisors did permit him to work on stock cars during business
hours.  Nevertheless, nothing in the record supports the claim that
Maietta Construction required Romn to serve as crew chief as part
of his job.  Indeed, as the magistrate observed, "[t]he work
performed by Romn at the race tracks was not primarily for the
benefit of Maietta; . . . the benefit to Maietta, if any, is too
tenuous to provide the basis for any legal liability to pay wages
for that work."  Romn v. Maietta Constr., Inc., No. 96-256, slip
op. at 5 (D. Me. Aug. 13, 1997).
         While Maietta's name as well as those of other companies
were painted on Michael's stock cars as sponsors, the link between
any potential benefits accruing to the construction firm from
Michael's performance as a stock car driver and Romn's crew chief
activities is far too attenuated to trigger the FLSA.  Maietta may
have garnered some advertising benefits from the success of
Michael's racing team, but such indirect benefits do not establish
an employer-employee relationship between the construction firm and
anyone who may have contributed his time to that activity.
         Furthermore, the record suggests that Romn served as
crew chief for his personal enjoyment rather than for the benefit
of Maietta.  Prior to joining Michael's racing team, Romn served
as a volunteer crew chief for his own stock cars as well as for two
cars he did not own.  In addition, he considered himself a
volunteer on Michael's crew before he started working for Maietta.  
From this evidence, it is reasonable to conclude that he continued
to pursue his crew chief activities primarily for his personal
benefit during his employment as a Maietta welder.
         Romn responds that the fact he may have volunteered to
be Michael's crew chief is not determinative.  He argues in his
brief, "[t]he crucial question is not whether the work was
voluntary but rather whether the (employee) was in fact performing
services for the benefit of the employer with the knowledge and
approval of the employer."  Secretary of Labor v. E.R. Field, Inc.,
495 F.2d 749, 751 (1st Cir. 1974).  Romn fails to recognize that
he was hired to weld and fabricate construction equipment rather
than to help Michael race his stock cars.  If the plaintiff had
voluntarily expended extra time engaged in welding work, and
Maietta knew and approved of such work, the company would have to
compensate Romn for those hours.  However, we have established
that the connection between Romn's crew chief activities and any
benefits to Maietta is too insubstantial to warrant compensation
under the FLSA.  Therefore, Romn cannot recover for the time he
volunteered to serve as Michael's crew chief.
         C.   State Law Penalties
         Romn argues that the trial court erred in failing to
grant him the remedies set forth in 26 Me. Rev. Stat. Ann.  626-A
for Maietta's violation of  621 of that statute.  We disagree.  
As the trial court noted, "the FLSA is the exclusive remedy for
enforcement of rights created under the FLSA."  Romn, No. 96-256,
slip op. at 7 (citing Tombrello v. USX Corp., 763 F. Supp. 541, 544
(N.D. Ala. 1991)).  That is, "the plaintiff cannot circumvent the
exclusive remedy prescribed by Congress by asserting equivalent
state claims in addition to the FLSA claim."  Tombrello, 763 F.
Supp. at 545.
    Romn contends that his claim for relief under  621(1)
has no FLSA equivalent.  However, our review of the complaint as
well as the record shows that Romn never raised a claim under that
subsection.  Instead, Romn sought relief under both the FLSA and
26 Me. Rev. Stat. Ann.  664 and 670 for minimum wage and overtime
pay violations.  Since Romn received compensation under the FLSA
for his claims, he cannot recover again under Maine law.
    D.   Compensatory Time
    Romn contends that the trial court erred in calculating
his back pay award.  The court ruled that Romn was entitled to the
overtime rate of $24 an hour for 120.75 hours of compensatory time.  
However, it credited Maietta for payment of $16 an hour for 105 of
these hours.  In effect, the trial court deducted any compensatory
time payments already made by Maietta to Romn at the regular rate
of pay from the total overtime pay he should have received for
those held hours.  The plaintiff argues that the trial court erred
in allowing such a deduction.
    As previously mentioned, the FLSA requires employers to
compensate employees at a rate one and one-half times the regular
rate of pay for any hours worked in excess of 40 hours per week.  
See 29 U.S.C.  207(a).  These payments must be made in "cash or
its equivalent."  29 C.F.R.  531.27.  "Employers and employees may
not, in general, make agreements to pay and receive less pay than
the statute provides for.  Such agreements are against public
policy and unenforceable."  See Rudolph v. Metropolitan Airports
Comm'n, 103 F.3d 677, 680 (8th Cir. 1996) (citing Barrentine v.
Arkansas-Best Freight Sys., Inc., 450 U.S. 728 (1981)).  Thus, we
agree with the trial court that Romn is entitled to overtime pay
for his compensatory time.
    We reject Romn's challenge to the trial court's
calculation of back pay.  In resolving this issue, we find D'Camerav. District of Columbia, 722 F. Supp. 799 (D.D.C. 1989), the case
cited by appellee, persuasive.  In D'Camera, the district court
allowed the District of Columbia to deduct compensatory time used
by the plaintiff police officers from an award of back pay.  While
the district court acknowledged that "[t]he FLSA does not expressly
authorize such a deduction, nor does its legislative history offer
any guidance,"  it found the District of Columbia's calculation to
be "fair and permissible under the Act."  Id. at 803.  The district
court held, and we concur, that "[p]laintiffs are entitled to be
made whole, not to a windfall at the [defendant's] expense."
    The language of the statute also suggests that we follow
this course.  Section 216(b) reads, "[a]ny employer who violates
the provisions of sections 206 or section 207 of this title shall
be liable to the employee or employees affected in the amount of
their . . . unpaid overtime compensation . . . and in an additional
equal amount as liquidated damages."  29 U.S.C.  216(b) (emphasis
added).  Since Romn received partial payment for his overtime
hours, Maietta remains responsible only for the unpaid portion.  We
find that the trial court's award of liquidated damages adequately
compensated him for Maietta's violation of the FLSA.  Cf. D'Camera,
722 F. Supp. at 804.  Accordingly, we affirm the trial court's
award of $2,436 plus costs and reasonable attorney's fees.
                       III.  CONCLUSION
    For the foregoing reasons, we affirm the trial court's
findings of fact and conclusions of law.
    Costs to appellee.

</body>

</html>